511 So.2d 536 (1987)
FIRST INTERSTATE DEVELOPMENT CORP., Etc., et al., Petitioners,
v.
Carlos M. ABLANEDO, et al., Respondents.
No. 67848.
Supreme Court of Florida.
July 9, 1987.
Rehearing Denied September 16, 1987.
*537 John M. Starling of Holland, Starling & Severs, P.A., Titusville, for petitioners.
Kenneth A. Studstill of Kenneth A. Studstill, P.A., Titusville, for respondents.
PER CURIAM.
This is a petition to review First Interstate Development Corp. v. Ablanedo, 476 So.2d 692 (Fla. 5th DCA 1985), concerning asserted fraud claims in a land development. The relevant district court ruling (1) upheld a compensatory damage judgment even though one of the fraud claims was improperly submitted to the jury, and (2) held punitive damages claims must be submitted to a jury where the underlying fraud claim is sufficient to warrant jury consideration. We accepted jurisdiction under article V, section 3(b)(3), Florida Constitution, based upon apparent conflict with Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936), and Como Oil Co. v. O'Loughlin, 466 So.2d 1061 (Fla. 1985). We quash that portion of the district court's opinion that denies petitioners a new trial on compensatory damages and approve the district court in its determination that punitive damages should have been submitted to the jury under the circumstances of this case.
The petitioner First Interstate Development Corporation developed Ocean Woods as a planned unit development consisting of single-family homes, cluster homes, and villas, totalling 300 units. Substantial areas were intentionally left undeveloped to create a natural environment. The respondents, as property owners in the development, initially instituted this action in 1980, primarily to obtain control over the homeowners association. In 1983, respondents amended their complaint to include allegations that the developers fraudulently misrepresented the entire project as an oceanfront development and that the developers fraudulently misrepresented that they would build a nature trail.
The record reflects that all of the individual respondents' properties were nonoceanfront. The oceanfront parcels were undeveloped at the time respondents purchased their subject properties. Testimony was not uniform regarding what the respondents were told or understood concerning the beachfront property. Some were told the entire project was a beachfront project; others stated that they relied exclusively on an advertising brochure, which they believed represented the planned unit development, including 600 feet of ocean frontage; others stated they were told that highrise condominiums were planned for that property; another group testified they were told there were no plans for the oceanfront property at that time, but that whatever was built would be different from the rest of Ocean Woods. The petitioners' advertising brochure is not clear whether the boundaries of the planned unit development include the oceanfront parcel in question. With regard to the nature trail, the record establishes that petitioners had constructed part of the nature trail and *538 were constructing the balance when they were stopped by the city.
The trial court, at the end of all the evidence, found an insufficient basis for punitive damages and directed a verdict on that issue for the petitioners. The trial court submitted the alleged fraudulent claims on the oceanfront misrepresentation and the failure to complete construction of the nature trail to the jury for compensatory damages; the jury returned a compensatory damage verdict for fifty respondents in the amount of $304,600.25.
The district court affirmed the compensatory damage award, but reversed and remanded for a new trial on punitive damages. In so holding, the district court found no evidence that First Interstate had fraudulently promised to construct the nature trail and noted that petitioners had commenced construction "until they were stopped by the City." 476 So.2d at 694. The district court further stated, "[w]hile evidence on this failure to furnish the trail as promised may have been the basis for a breach of contract case, it does not in itself establish an intent to defraud." Id. After so holding, the district court rejected petitioners' contention that the jury's damage determination must be reversed because the amount attributable to the nature trail could not be separated from the alleged oceanfront fraud claim. The district court held, "where a general verdict form is submitted to the jury without objection, reversal is improper where no error is found as to one of several issues submitted to the jury on which the verdict may be properly based." 476 So.2d at 695 (citations omitted). The district court concluded, "we have no way of knowing what, if any, weight the jury placed on the testimony regarding the nature trail." Id. With regard to the development's oceanfront status, the district court found sufficient evidence to submit that issue to the jury. The district court then determined that, since the oceanfront misrepresentation was a fraudulent claim, the question of whether punitive damages were proper was for the jury, not the trial judge.

Two-Issue Rule
We first address the district court's holding that the compensatory damage verdict should be affirmed even though the evidence pertaining to the nature trail fraud and misrepresentation should not have been submitted to the jury. We disagree and find that the two-issue rule does not apply when two distinct claims for liability result in separate claims for damages in the same action. We previously summarized the two-issue rule as follows:
[W]here there is no proper objection to the use of a general verdict, reversal is improper where no error is found as to one of two issues submitted to the jury on the basis that the appellant is unable to establish that he has been prejudiced.
Whitman v. Castlewood International Corp., 383 So.2d 618, 619 (Fla. 1980) (citing Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla. 1977). This rule applies to those actions that can be brought on two theories of liability, but where a single basis for damages applies. For instance, in products liability, the claim can be brought on both negligence and breach of implied warranty, but the measure of damages for the resulting personal injury is the same. That is not the circumstance in the instant case. Here, the fraud claim for failure to construct a nature trail and the claim for damages because of reduction in value of respondents' properties for the failure to complete the trail is distinct from the claim of diminished property values for the misrepresentation of the project as oceanfront. Each claim is distinct and has a separate measure of damages. Finding liability on one claim does not entitle the respondents to receive the total amount of damages attributable to both theories of liability. We will not presume that petitioners were not prejudiced by the improper submission of the nature trail issue to the jury. Consequently, the jury's compensatory damage award must be reversed.

Punitive Damages Claim
The district court correctly determined that the issue of punitive damages in this case should have been submitted to the jury. In Winn & Lovett we explicitly stated *539 that punitive damages are appropriate for any tortious conduct accomplished through fraud:
Exemplary damages are given solely as a punishment where torts are committed with fraud, actual malice or deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.
... .
In order to recover exemplary or punitive damages the declaration msut [sic] allege some general facts and circumstances of fraud, malice, gross negligence or oppression tending to show plaintiff's right to recover such damages in addition to damages by way of compensation.
126 Fla. at 327-28, 171 So. at 221-22 (emphasis added). The overwhelming weight of authority in this state makes it clear that proof of fraud sufficient to support compensatory damages necessarily is sufficient to create a jury question regarding punitive damages.[*]
This is so because intentional misconduct is a necessary element of fraud. Indeed, to prove fraud, a plaintiff must establish that the defendant made a deliberate and knowing misrepresentation designed to cause, and actually causing detrimental reliance by the plaintiff. See Lance v. Wade, 457 So.2d 1008, 1011 (Fla. 1984). We conclude that the district court correctly ruled that the punitive damage issue was for the jury, not the judge, to decide once a case for fraud had been made.
For the reasons expressed, we quash that part of the district court decision regarding the two-issue rule and remand for new trial. We approve that part regarding punitive damages.
It is so ordered.
McDONALD, C.J., and EHRLICH, SHAW and BARKETT, JJ., and ADKINS, J. (Ret.), concur.
OVERTON, J., concurs in part and dissents in part with an opinion.
OVERTON, Justice, concurring in part, dissenting in part.
I fully concur with the majority holding on the two-issue rule.
I dissent from the holding that every claim based on fraud which is sufficiently established to go to the jury is automatically eligible for punitive damages. I believe the trial judge should make an initial threshold determination of whether a legal basis and adequate evidence exist to allow recovery for punitive damages, in the same manner as the trial judge now determines for negligence claims.
Interestingly, the majority quotes as authority Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936), where we stated that "[e]xemplary damages are given solely as a punishment where torts are committed with fraud." Id. at 327, 171 So. at 221. In Winn & Lovett we also said: "The province of the Court in all cases of claims for punitive or exemplary damages is to decide at the close of the evidence, as [a] matter of law, the preliminary question whether or not there *540 is any legal basis for recovery of such damages." Id. at 328-29, 171 So. at 222 (emphasis added). Our opinion in Winn & Lovett did not limit that statement to negligence cases as the majority now holds.
In White Construction Co. v. Dupont, 455 So.2d 1026 (Fla. 1984), and Carraway v. Revell, 116 So.2d 16 (Fla. 1959), we held that the character of the conduct necessary to support a punitive damages award must be the same as that required to support a conviction for a criminal act and that this type of additional circumstance of aggravation must be present to justify a punitive damage claim. In Dr. P. Phillips & Sons v. Kilgore, 152 Fla. 578, 12 So.2d 465 (1943), we held:
Punitive or exemplary damages is an amount allowed over and above actual or compensatory damages. Its allowance depends on malice, moral turpitude, wantonness, or the outrageousness of the tort and is awarded as a deterrent to others inclined to commit a like offense. It is in the province of the trial court to determine as a matter of law whether or not there is a basis for punitive damages and instruct the jury accordingly. Whether or not the elements are present to warrant it is for the jury in the light of all the facts of the case.
Id. at 582, 12 So.2d at 467 (emphasis added).
I do not find this claim of fraudulent misrepresentation is sufficient to allow an award of punitive damages. To submit the facts of this case to a jury and allow a punitive damages award is a gross injustice under these circumstances. Clearly, this case would not be one where a criminal penalty could be exacted from the petitioner or its employees. In this action, the respondents claimed fraudulent misrepresentation based on a salesman's statements that certain oceanfront properties were to be subsequently developed as part of the project. However, the oceanfront properties were in fact excluded from the development.
Ironically, at the beginning of this dispute between the property owners and the developer over control of the property owners association, the association sought an agreement from the developer to exclude the oceanfront properties from the development in order to limit the number of units allowed access to the project's common elements. Given this unrefuted fact alone, I believe the trial judge properly determined that a punitive damage claim should not be submitted to the jury. To say punitive damages may properly be awarded in these circumstances is providing substantial fuel to the fire being stoked by those who would totally abolish punitive damages.
For these reasons, I would quash that portion of the decision of the district court of appeal which allows punitive damages.
NOTES
[*] Machado v. Foreign Trade, Inc., 478 So.2d 405 (Fla. 3d DCA 1985); Tinker v. De Maria Porsche Audi, Inc., 459 So.2d 487 (Fla. 3d DCA 1984), review denied, 471 So.2d 43 (Fla. 1985); Gold v. Wolkowitz, 430 So.2d 556 (Fla. 3d DCA), review denied, 437 So.2d 677 (Fla. 1983); Rolls v. Bliss & Nyitray, Inc., 408 So.2d 229 (Fla. 3d DCA 1981), review dismissed, 415 So.2d 1359 (Fla. 1982); Vance v. Indian Hammock Hunt & Riding Club, Ltd., 403 So.2d 1367 (Fla. 4th DCA 1981); Otey v. Florida Power & Light Co., 400 So.2d 1289 (Fla. 5th DCA 1981), review denied, 412 So.2d 465 (Fla. 1982); Haendel v. Paterno, 388 So.2d 235 (Fla. 5th DCA 1980); American Motorcycle Institute, Inc. v. Mitchell, 380 So.2d 452 (Fla. 5th DCA 1980); Gottsch v. Walker, 376 So.2d 879 (Fla. 1st DCA 1979), cert. denied, 388 So.2d 1113 (Fla. 1980); Charter Air Center, Inc. v. Miller, 348 So.2d 614 (Fla. 2d DCA), cert. denied, 354 So.2d 983 (Fla. 1977); Lloyd v. DeFerrari, 314 So.2d 224 (Fla. 3d DCA 1975), cert. denied, 330 So.2d 19 (Fla. 1976); Roger Holler Chevrolet Co. v. Arvey, 314 So.2d 633 (Fla. 4th DCA 1975); Ashland Oil, Inc. v. Pickard, 269 So.2d 714 (Fla. 3d DCA 1972), cert. denied, 285 So.2d 18 (Fla. 1973); City of Hollywood v. Coley, 258 So.2d 828 (Fla. 4th DCA 1971); Associated Heavy Equipment Schools, Inc. v. Masiello, 219 So.2d 465 (Fla. 3d DCA 1969); Moore v. Southern Bell Tel. & Tel. Co., 176 So.2d 558 (Fla. 2d DCA 1965).